**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| ANGELA SERCER,                    ) | |
|                                   ) | |
|         Plaintiff,                ) | |
|                                   ) | |
| v.                                ) | Civil Action No. 1:14-cv-0681 |
|                                   ) | |
| ERIC H. HOLDER,                   ) | |
| Attorney General,                 ) | |
| U.S. Department of Justice,       ) | |
|                                   ) | |
|         Defendant.                ) | |

<u>**MEMORANDUM OPINION**</u>

THIS MATTER comes before the Court on Defendant's motion for summary judgment.

Following her promotion to Supervisory Special Agent in the Federal Bureau of Investigation's ("F.B.I.'s") Behavioral Assessment Unit 1 ("B.A.U. 1"), Plaintiff Angela Sercer experienced a series of workplace events that she found offensive and discriminatory. Because the events, taken individually or collectively, do not constitute unlawful discrimination under Title VII, and because there is no genuine issue of material fact to be decided, summary judgment in favor of Defendant is warranted.

Plaintiff began her employment with the F.B.I. on March 10, 2002, and was first assigned to B.A.U. 1 on March 14, 2010. At the time, B.A.U. 1 primarily focused on counterterrorism and

addressing threats of violent crime and terrorism. At all relevant times, the unit fell within the Investigative Operations Support Section ("I.O.S.S.") of the Critical Incident Response Group ("C.I.R.G."). Plaintiff claims she was the victim of numerous acts of discrimination based on her sex during her assignment with B.A.U. 1. She also claims the F.B.I. retaliated against her after she engaged in protected communication with the F.B.I.'s Office of Equal Employment Opportunity Affairs ("O.E.E.O.A." or "E.E.O.").

Plaintiff timely alleged a) four discrete acts of sex discrimination, b) that she was subjected to a hostile work environment based on her sex, and c) the F.B.I.'s actions constitute unlawful retaliation against her for twice meeting with an O.E.E.O.A. counselor—first on March 5, 2012, and next on November 5, 2012.

The first two discrete acts both stem from her 2012 performance evaluation; she received an "Excellent" overall rating, lower than the "Outstanding" rating she feels she deserved. Following her receipt of the 2012 evaluation, Plaintiff filed a grievance with the assistant director of the C.I.R.G., asserting her overall rating and her rating in three specific categories were too low. The denial of that grievance on November 21, 2012 is the second alleged discrete act. The third discrete act was her transfer from B.A.U. 1 to a unit

within the F.B.I.'s Lab Division on November 8, 2012. Finally, Plaintiff alleges sex discrimination as the motivation for a recommendation that she be deemed to have lost effectiveness within B.A.U. 1. This recommendation was never acted upon, as it took place after Plaintiff's transfer to the Lab Division.

Plaintiff's hostile work environment claim is based on the discrete acts listed above along with numerous additional incidents between 2011 and 2013. The additional incidents include: multiple offensive remarks made by one of Plaintiff's coworkers; distribution within B.A.U. 1 of "The Game," a book described as an instructional manual for "pickup artists"; her unit chief's allocation of an F.B.I. vehicle to one of Plaintiff's male colleagues; Plaintiff's unit chief's lack of support for her research project on lone offenders; Plaintiff's unit chief's consideration of directing her referral to the F.B.I.'s Employee Assistance Program ("E.A.P."); direction from her assistant section chief and unit chief to edit a document; and the placement of erroneous documents in Plaintiff's "drop file"—an unofficial file used to document performance throughout the year for use in annual performance evaluations. Following discovery, Defendant now moves for summary judgment.

Title VII states that "[i]t shall be an unlawful employment practice for an employer…to discriminate against any individual with respect to [her] compensation, terms, conditions, or

privileges of employment, because of such individual's…sex." 42 U.S.C. § 2000e-2(a)(1). Similarly, it is unlawful for an agency to discriminate against an employee in retaliation for an employee's exercise of her rights under Title VII. See Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008).

Plaintiff's Title VII claims are subject to the familiar burden-shifting analysis first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The initial burden is on Plaintiff to raise an inference of discrimination by establishing a prima facie case of discrimination by a preponderance of the evidence. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If she establishes a prima facie case, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason" for its actions. Id. at 253. Then, if the defendant successfully carries its burden, "the plaintiff [has] an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. As with all motions for summary judgment, this Court views the facts and draws reasonable inferences in the light most favorable to the nonmoving party.

In order to establish a prima facie case of sex discrimination, Plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse

employment action; and (4) that similarly-situated employees outside the protected class received more favorable treatment." Gerner v. Cnty. of Chesterfield, Va., 674 F.3d 264, 266 (4th Cir. 2012).

As a female, Plaintiff is a member of a protected class. Further, her annual performance evaluations indicate that her job performance during the time period in question was not just "satisfactory," but "excellent." However, no adverse employment action was taken against her—to include the creation of a hostile work environment—and she has not shown that similarly-situated male employees received more favorable treatment by the F.B.I.

As to discrete acts of discrimination, Plaintiff concedes that most of her allegations are untimely. In order to exhaust her administrative remedies, something she must do before bringing a Title VII lawsuit in federal court, Plaintiff was required to report any discrete act of discrimination to an E.E.O. counselor within 45 days of its occurrence. 29 C.F.R. § 1614.105(a)(1). Aware of the 45-day requirement, Plaintiff first contacted an E.E.O. counselor on November 7, 2012.[1] Therefore she did not timely exhaust her administrative remedies for any

---

1 Plaintiff was informed of the 45-day requirement in writing when she met with an O.E.E.O.A. counselor on March 13, 2012. In the unlikely event that she was unaware of the requirement prior to this meeting, there is no doubt she was aware following the meeting.

discrete acts that occurred prior to September 21, 2012. See
Jakubiak v. Perry, 101 F.3d 23, 26-27 (4th Cir. 1996).

Regarding Plaintiff's four allegations of sex
discrimination based on discrete acts taking place after
September 21, 2012, she has not shown any adverse employment
action taken by the F.B.I. A "poor performance evaluation is
actionable only where the employer subsequently uses the
evaluation as a basis to detrimentally alter the terms or
conditions of the recipient's employment." James v. Booz-Allen &
Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004). Plaintiff's
2012 evaluation of "Excellent" hardly qualifies as a "poor"
rating, but even if it is viewed that way she has not shown any
detrimental alteration of the terms or conditions of her
employment as a result of the evaluation. Further, the denial of
Plaintiff's internal grievance does not constitute an adverse
employment action because it did not adversely affect the terms,
conditions, or benefits of her employment. Id. at 375.

Plaintiff's lateral transfer from B.A.U. 1 to the Lab
Division cannot be an adverse employment action. In order for a
transfer to be an adverse employment action,

> [t]here must be some significant detrimental effect
> and absent any decrease in compensation, job title,
> level of responsibility, or opportunity for promotion,
> reassignment to a new position commensurate with one's
> salary level does not constitute an adverse employment
> action even if the new job does cause some modest
> stress not present in the old position.

Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007). Moreover, Plaintiff's transfer was not only lateral, it was *voluntary*. Although she characterizes the transfer as a "coerced 'voluntary'" action, she has provided no indication of how her application on October 28, 2012, was the product of anything other than her desire to transfer. A transfer request may be made for a variety of reasons; some seek to obtain a desirable position while others seek to leave an undesirable one. Whether Plaintiff's decision to transfer was based on the Lab Divison's appeal or her frustration with B.A.U. 1 is ultimately irrelevant to her claim that this voluntary transfer was somehow an unlawful adverse employment action due to sex discrimination by the F.B.I.

Plaintiff's final timely discrete act allegation, regarding a recommendation that she be considered for a loss of effectiveness determination, fails for the same reason the grievance denial allegation fails: she has not shown how this recommendation could have adversely affected the terms, conditions, or benefits of her employment. See James, 368 F.3d at 375.

Turning to Plaintiff's hostile work environment claim, to prevail she must prove that any harassment "was (1) unwelcome, (2) based on [her sex], (3) sufficiently severe or pervasive to

alter the conditions of her employment and create an abusive atmosphere, and (4) imputable to [Defendant]." E.E.O.C. v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009). Defendant's conduct must be "severe or pervasive" because "Title VII does not create a general civility code in the workplace; it only proscribes behavior that is so objectively offensive as to alter the conditions of the victim's employment." Mosby-Grant v. City of Hagerstown, 630 F.3d 326 (4th Cir. 2010).

When considering Plaintiff's hostile work environment claim, this Court must look to all the alleged misconduct—including events that would be untimely if brought as discrete acts—to determine whether "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). Here, Plaintiff clearly has not shown working conditions that rise to the level of a Title VII violation.

During the years comprising this complaint, Plaintiff was subject to (at most) six comments by one of her coworkers. Some of the comments were rather innocuous—a coworker told her he was "physically attracted" to her and multiple people stated Plaintiff "screamed" at her coworkers and supervisors. Others

were inappropriate—comments about "getting laid" and women's underwear along with accounts of convincing a waitress to expose her breasts by acting as a porn producer during an official deployment. These comments are not sufficiently "severe and pervasive" to create a hostile work environment. Moreover, Plaintiff admits she did not complain about her coworker's comments, leaving no basis to impute them to the F.B.I.[2]

"The Game" was distributed because of its views on behavior observation and exploitation. Whether it was a useful training aid for the members of B.A.U. 1 is irrelevant here. That some (or most) of its contents were sexual in nature and offensive does not make its distribution a form of sexual harassment, especially for F.B.I. employees for whom exposure to offensive materials is routine. B.A.U. 1's daily focus was on counterterrorism and addressing threats of violent crime and terrorism. Distribution of "The Game" in this setting cannot possibly have created a hostile work environment under Title VII.

Plaintiff's remaining allegations are all so innocuous that they cannot possibly indicate her workplace was "permeated with discriminatory intimidation, ridicule, and insult," that was sufficiently severe or pervasive to alter the conditions of her

---

2 The only comment made by management was Plaintiff's unit chief's statement that she "screamed" at her coworkers and supervisors.

employment. Vehicle allocation, lack of support for a research project, direction to edit a document, consideration for E.A.P., and maintaining an unofficial "drop file" for help with annual performance evaluations are all routine workplace events. That Plaintiff disagreed with each decision by management does not matter. These events simply cannot be viewed in any way as the type of hostile work environment prohibited by Title VII.

It would be unlawful for the F.B.I. to retaliate against Plaintiff for any protected communication she made to an E.E.O. representative. It is irrelevant whether her communications led to actionable claims of discrimination. The communications themselves are protected and retaliation for having made them is unlawful independent of their content. To establish a prima facie case of retaliation, Plaintiff must show "(1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action."[3] Ziskie, 547 F.3d at 229 (4th Cir. 2008). For all the reasons previously stated regarding Plaintiff's sex discrimination and hostile work environment claims, she has not shown that the F.B.I. acted

---

3 Here, as in Ziskie, Plaintiff's retaliation claim fails regardless of whether this Court applies the "adverse personnel action" standard or the broader "materially adverse" standard of Burlington N. & Santa Fe R.R. v. White, 548 U.S. 53 (2006), which applies in the private sector. Therefore, it is unnecessary for this Court to decide whether the "materially adverse" standard applies to federal employees.

adversely against her. Therefore her retaliation claim fails as well.

Because Plaintiff has not shown any adverse employment action taken against her, she cannot establish a prima facie case of sex discrimination or retaliation. Because she has not shown severe and pervasive harassment by the F.B.I., she cannot establish a prima facie hostile work environment case. Therefore, under McDonnell Douglas summary judgment must be entered in favor of Defendant.

An appropriate order shall issue.


_Claude M. Hilton_
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April 21, 2015